# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DONALD LEE FIKE, #490077,

        Petitioner,

v.                          Case No. 2:07-CV-10868
                                  Honorable Lawrence P. Zatkoff

JAN TROMBLEY,

        Respondent.
_____/

## OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner, Donald Lee Fike, is a state inmate currently incarcerated at Gus Harrison Correctional Facility in Adrian, Michigan. Petitioner was convicted at the conclusion of a Lapeer County Circuit Court jury trial of one count of first-degree criminal sexual conduct, Mich. Comp. Laws §750.520b(1)(a); and two counts of second-degree criminal sexual conduct, Mich. Comp. Laws §750.520c(1)(a). Petitioner was sentenced to concurrent prison terms of ten to twenty years for the first-degree criminal sexual conduct conviction and five to fifteen years for the second-degree criminal sexual conduct conviction. Petitioner has filed a petition for writ of habeas corpus through counsel under 28 U.S.C. §2254. For the reasons that follow, the Court will deny the petition.

## I. BACKGROUND

The Michigan Supreme Court in this case set forth underlying facts, which are presumed correct on habeas review, *see Monroe v. Smith,* 197 F. Supp.2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. App'x. 730 (6th Cir. 2002), as follows:

This case arose when the complaining witness, defendant's step-granddaughter, was observed while asleep engaging in what the observing adult believed was suspicious behavior[1]. The complaining witness was about one month away from her eighth birthday. The adult reported the incident to child protective services, which initiated an investigation. The complaining witness was interviewed at a facility called CARE House, and she was given a physical examination. On the basis of the interviews and examination, defendant was arrested and charged with sexually abusing his step-granddaughter. The incidents alleged in this matter would have taken place when the complaining witness was between the ages of four and five.

*People v. Fike,* No: 260535, 2006 WL 2271267, *1 (Mich. Ct. App. Aug. 8, 2006).

Petitioner filed an appeal of right with the Michigan Court of Appeals and raised the following issues:

I. Appellant was denied the effective assistance of counsel where his trial attorney, with no strategic purpose, introduced outcome determinative bad man evidence that told the jury Appellant had been in jail for an unnamed offense, 2) failed to see a key point that would have stopped the prosecution from "driving a Mack truck" through the core of his defense, 3) introduced the element of penetration necessary for the critical count against his client and 4) failed to investigate and bring in an important expert witness to counter highly damaging claims made by a prosecution "expert" witness.

II. The failure to take photographs or measurements of the gynecological exam or to record the Care House interview with audio or video tape was a failure to preserve key evidence that should be held to constitute "bad faith destruction" of potentially exculpatory evidence in violation of the Due Process Clauses of the United States and Michigan Constitutions.

III. Where there was no clear evidence of penetration, Appellant's conviction on Count I is against the "great weight of the evidence" and is based on insufficient evidence, and his State and Federal constitutional right to be free from conviction in the absence of proof beyond a reasonable doubt has been violated.

---

[1]The adult in this case is Catherine Symonds, the complainant's Girl Scout leader. She observed complainant sleeping while the Girl Scout troop was on a camp-out. The suspicious behavior while sleeping included "whimpering and whining," placing her hands over her pelvic area, placing her hands behind her back, talking in her sleep and saying things like "stop," "no," and "please don't."

IV. Appellant was denied a fair trial in violation of the Due Process Clauses of the United States and Michigan Constitutions when the trial court, over objection, permitted the late endorsement of a key prosecution witness on the second day of a three day trial."

The Michigan Court of Appeals affirmed Petitioner's convictions. *Id.* Petitioner sought leave to appeal to the Michigan Supreme Court raising the same issues that were asserted in the Court of Appeals. The Michigan Supreme Court denied leave because the Court was not persuaded that the questions presented should be reviewed. *People v. Fike*, 477 Mich. 951; 723 NW2d 861 (2006)(table).

Petitioner now seeks to file a writ of habeas corpus asserting the same four claims presented in the state appellate courts with addition of the following claim:

Assuming arguendo that the standard of review set forth in 28 U.S.C. §2254(d)(1) precludes relief in this action, the court should not apply that standard because it is unconstitutional, and the court should grant the writ under a de novo standard of review.

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state court decisions. Petitioner is entitled to the writ of habeas corpus if he can show that the state court's adjudication of his claim on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original).  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.  "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker,* 371 F.2d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. §2254(e)(1)).

### III.  DISCUSSION

#### A. Unconstitutional Standard of Proof (28 U.S.C. §2254(d)(1))

Because Petitioner challenges the constitutionality of the statute setting the standard of review for habeas actions in federal court, the Court will first address this argument.

Petitioner contends that despite the Court's findings relative to the above stated issues, he remains entitled to relief because the standard of review set forth under 28 U.S.C. §2254(d)(1) is unconstitutional for five reasons: (1) the limitations under 28 U.S.C. §2254(d)(1) violate the doctrine of separation of powers; (2) the limitations under 28 U.S.C. §2254(d)(1) violate the Supremacy Clause of the United States Constitution; (3) the

unconstitutionality of 28 U.S.C. §2254(d)(1) requires the federal court to issue advisory opinions that may not be enforced; (4) the standard of review under 28 U.S.C. §2254(d)(1) violates the Due Process Clause of the Fourteenth Amendment; and (5) The strictures of the AEDPA violate Article I, Section 9 of the federal constitution because they effectively suspend the writ of habeas corpus. The Court does not find these arguments persuasive, and further finds that the AEDPA standard of review governs Petitioner's claims. Accordingly, habeas relief cannot be granted or denied pursuant to a de novo standard of review.

First, Petitioner asserts that 28 U.S.C. §2254(d)(1) violates the separation of powers by mandating the law to be applied by federal courts and removing their power to adjudicate constitutional issues. The Fourth and Ninth Circuits both have rejected Petitioner's argument.

> In amending section 2254(d)(1), Congress has simply adopted a choice of law rule that prospectively governs classes of habeas cases; it has not subjected final judgments to revision, nor has it dictated the judiciary's interpretation of governing law and mandated a particular result in any pending case. And amended section 2254(d) does not limit any inferior federal court's independent interpretive authority to determine the meaning of federal law in any Article III case or controversy. Under the AEDPA, we are free, if we choose, to decide whether a habeas petitioner's conviction and sentence violate any constitutional rights. Section 2254(d) only places an additional restriction upon the scope of the habeas remedy in certain circumstances.

*Green v. French,* 143 F.3d 865, 874-75 (4th Cir. 1998) (internal citations), abrogated on other grounds by *Williams v. Taylor,* 529 U.S. 362 (2000).

> Section 2254(d) merely limits the source of clearly established law that the Article III court may consider, and that limitation served to govern prospectively classes of habeas cases rather than offend the court's authority to interpret the governing law and to determine the outcome in any pending

case.

*Duhaime v. Ducharme,* 200 F.3d 597, 601 (9th Cir. 2000); *see also*, *Evans v. Thompson,*

518 F.3d 1, 4-10 (1st Cir. 2008). For these reasons, the Court likewise rejects Petitioner's

claim that the AEDPA standard of review violates the separation of powers by encroaching

on the Court's exercise of the judicial power.

Second, Petitioner maintains that the AEDPA standard violates the Supremacy

Clause of the United States Constitution. The Court finds that this claim has no merit.

> Nothing in the AEDPA subjugates the Constitution to state law. As the
> Supreme Court has often noted, the state courts, as co-equal guardians of
> federal constitutional rights, are perfectly capable of passing on federal
> constitutional questions. And under the Supremacy Clause, state courts are
> obligated to enforce the Constitution above state law to the contrary. Nothing
> in the AEDPA changes this rule of law. The AEDPA does, to be sure, require
> that federal courts give deference to the federal constitutional decisions of
> the state courts. This, however, does not offend the Supremacy Clause,
> which "is concerned with promoting the supremacy of federal law, not federal
> courts." In short, the AEDPA standard of review does not violate the
> Supremacy Clause because that Clause "is concerned about a conflict
> between state and federal law, not between state and federal judges.
> Indeed, to say, as the Clause does, that federal law shall be 'Supreme . . .
> anything in the Constitution or laws of any State to the Contrary
> notwithstanding' is to say nothing at all about the respective roles of the state
> and federal courts."

*Byrd v. Trombley,* 580 F.Supp.2d 542, 552 (E.D. Mich. 2008) (internal citations omitted).

Therefore, the Court does not find 28 U.S.C. §2254(d)(1) to be violative of the Supremacy

Clause.

Third, Petitioner claims that 28 U.S.C. §2254(d)(1) violates Article III of the

Constitution by requiring federal courts to issue advisory opinions.

> [N]othing in the AEDPA requires a federal court to determine whether a state
> court wrongly, as opposed to unreasonably, applied the Constitution. A
> federal court may, and the courts often do, dispose of a habeas case merely
> by assessing the reasonableness of the state determination, without ever

rendering an opinion on the ultimate correctness of the state court decision.

> In any event, any determination on the merits of the underlying constitutional claim as part of the reasonableness inquiry under §2254(d)(1) does not amount to an advisory opinion. The underlying constitutionality may decide the case, for if the particular claim is without merit as a matter of federal constitutional law, it necessarily follows that the state court's rejection of the claim was reasonable. At worst, a court's determination on the underlying constitutional question would be dictum, but dictum is not itself an unconstitutional advisory opinion.

*Id.* at 552-53 (internal citations omitted). Therefore, 28 U.S.C. §2254(d)(1) is not violative of Article III as it relates to the issuance of advisory opinions.

Fourth, Petitioner contends that 28 U.S.C. §2254(d)(1) violates the Due Process Clause of the Fourteenth Amendment. Petitioner argues that the "standard of review in 28 U.S.C. §2254(d)(1) expressly prevents federal courts from remedying a whole class of due process violations (i.e., those in which a state court has wrongly, but unreasonably, applied constitutional guarantees to the state defendants), and in so doing it runs afoul of the Due Process Clause."

> Contrary to petitioner's argument, under the AEDPA standard of review he "is not denied a forum for the vindication of his constitutional rights. The Court still has the power to issue the writ, albeit under more tightly circumscribed conditions." In particular, no due process violation can be shown in light of the historical power of Congress and the courts to impose limitations on the scope of habeas relief.

*Id.* at 553 (internal citations omitted). Consequently, Petitioner's due process rights have not been violated.

Finally, Petitioner asserts that "the strictures set out in . . . AEDPA . . . violate Article I, Section 9 of the federal constitution because they effectively suspend the writ of habeas corpus."

The Supreme Court has "long recognized that 'the power to award the writ

by any of the courts of the United States, must be given by written law,' and . . . that judgments about the proper scope of the writ are 'normally for Congress to make.'" *Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996).

\* \* \*

The AEDPA does not suspend the writ as it was known at the time of the Founding, and "[a]ny suggestion that the Suspension Clause forbids every contraction of the powers bestowed by Congress in 1885, and expanded by the 1948 and 1966 amendments to §2254, is untenable . . . " [*Felker,* 518 U.S. at 664]. "Because federal courts are bound by the terms on which Congress sees fit to permit relief, we have no constitutional or other jurisprudential basis to be reluctant to accord state court decisions the full degree of deference that Congress intended and that the plain language of the statute requires."   *Neal v. Puckett,* 286 F.3d 230, 248 (5th Cir. 2002) . . . In light of the nature of the writ at common law, the historical power of Congress and the courts to alter the nature and scope of the writ, and the fact that §2254(d)(1) merely alters the standards on which the writ will issue, every court that has considered the issue has rejected a Suspension Clause challenge to the AEDPA standard of review.  *See Evans,* 518 F.3d at 12; *Olona v. Williams,* 13 Fed. App'x. 745, 747 (10th Cir. 2001); *Houston v. Roe,* 177 F.3d 901, 906 (9th Cir. 1999); *Green,* 143 F.3d at 875-76.

*Byrd,* 580 F.Supp.2d at 553-54.   Therefore, there has been no Suspension Clause violation.

For these reasons, Petitioner's constitutional challenge to 28 U.S.C. §2254(d)(1) is without merit; and this matter will be governed by the standard of review articulated above.

### B.  Ineffective Assistance of Counsel

Petitioner argues that his defense attorney rendered ineffective assistance of counsel in four respects.  Defense counsel: (1) should not have stipulated to Petitioner's prior misdemeanor conviction on an unrelated offense; (2) failed to investigate, subpoena and obtain CARE House pre-interview notes which were evidence that complainant's interview was suggestive in identifying Petitioner as the person who committed the sexual assault; (3) erred in introducing evidence of penetration for the first time on cross-examination; and (4) failed to request a continuance for purposes of investigating and

preparing a qualified expert witness (i.e., Michael F. Abramsky) to rebut the testimony of Amy Allen—the individual at CARE House who interviewed the complainant.

To show that Petitioner was denied effective assistance of counsel under federal constitutional standards, a petitioner must satisfy a two-prong test.  In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court sets forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Strickland,* 466 U.S. at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional  errors, the result of the proceeding would have been different" *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the

9

proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996). Under *Strickland,* a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy. *See Hutchinson v. Bell,* 303 F.3d 720, 749 (6th Cir. 2002).

### 1. Stipulation to a Prior Misdemeanor Conviction

Petitioner argues that defense counsel should not have stipulated to his prior misdemeanor bribery conviction in an unrelated criminal matter. He claims that such a stipulation was highly prejudicial and irrelevant. The Michigan Court of Appeals disagreed and stated as follows:

> There is no reason why admitting to a "non-violent misdemeanor that did not involve children" would affect the outcome of this case, and admitting to it gave defendant control over the existence of that information, precluding plaintiff from using it for impeachment. We find this a legitimate trial strategy.

*Fike,* No: 260535, 2006 WL 2271267, *1. Respondent argues that stipulating to the misdemeanor conviction was relevant because it provided an explanation as to why the complainant waited approximately a year and a half before reporting the sexual abuse. The transcript testimony and the police reports reveal that the complainant was very fearful of Petitioner and that it was not until she believed he was in jail that she felt safe and comfortable enough to tell someone about the abuse. Petitioner counters by arguing that he had been released from jail approximately ten days before the complainant was interviewed at CARE House. Therefore, Petitioner was not in custody when the complainant was interviewed at CARE House and that his incarceration had nothing to do with the complainant's delay in reporting the sexual abuse. However, there is no evidence

in the record that shows the complainant was aware of Petitioner's release.  Therefore, if the complainant still believed Petitioner was in custody, then she continued to feel comfortable reporting the sexual abuse despite the fact that he was actually released; and his incarceration becomes relevant for that purpose.  Although the complainant did not initiate the reporting (i.e., her Girl Scout troop leader initiated the investigation process), her fear of Petitioner during the CARE House interview may have still driven her to not be truthful when asked questions about the sexual abuse.

The admission of this "prior bad act" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); *Adams v. Smith,* 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Morever, Petitioner's incarceration for his prior "non-violent" conduct in an unrelated matter was relevant to explain why the victim did not report the sexual assault immediately after it occurred.  Under federal law, a petitioner's prior bad acts are admissible under F.R.E. 404(b) to explain why the victim submitted to the sexual assault and her delay in reporting the sexual assault to the police. *See United States v. Powers,* 59 F. 3d 1460, 1464 (4th Cir. 1995).

The record also indicates that the stipulation did not consist of extensive remarks, nor was its reference pronounced or persistent.  Accordingly, habeas relief is denied as to this prong of Petitioner's ineffective assistance of counsel claim.

## 2.  Failure to Adequately Prepare for Trial

Next, Petitioner claims that defense counsel was ineffective for failing to subpoena

or otherwise obtain all of the CARE House records, specifically the pre-interview notes regarding the complainant's interview, as they relate to the investigation of the complainant's report of sexual abuse. Petitioner claims that defense counsel's failure to obtain these records before trial demonstrated his lack of preparation. The Michigan Court of Appeals rejected Petitioner's claim:

> [P]laintiff was just as surprised as defendant to discover that certain documents had been omitted, and when the omission was discovered, both parties were restricted to examining the original documents in the middle of trial at CARE House, without the opportunity to make copies. At the time, seeking a continuance in a trial that appeared to be going well and would have been short in duration could have been reasonable trial strategy, which we will not not assess with hindsight. We are not persuaded that, under the circumstances, it was objectively incompetent to have missed the particular detail involved.

*Fike,* No: 260535, 2006 WL 2271267, *1.

Petitioner argues that these pre-interview notes that should have been subpoenaed by defense counsel and used in Petitioner's defense would have shown the jury the suggestive nature of the complainant's interview. The notes reveal that Kimberly Cunningham Hunt, the complainant's mother, informed CARE House that she believed Petitioner was responsible for the sexual abuse the complainant had suffered. Therefore, when Amy Allen conducted her interview with complainant, she already was predisposed to believe that Petitioner was the individual who sexually assaulted her, and arguably, the unrecorded interview was suggestive and was conducted in a manner which would induce the complainant to blame Petitioner for the sexual assault. Petitioner agues that presenting this evidence during trial would have been critical because the crux of the prosecution's case was that the interview lacked suggestiveness and that there was no predisposed focus upon Petitioner as the assailant in this case.

Respondent makes four points. First, the crux of the suggestive interview defense theory was whether Amy Allen gave Petitioner's name to the complainant during the interview. The pre-interview notes do not address that issue. The pre-interview notes only indicate that Kimberly Cunningham Hunt gave Petitioner's name to a Care House staff member, Jen Hay, and there was evidence that the complainant was not present during the pre-interview meeting. Second, the pre-interview notes did not show any indication that the interview with the complainant was suggestive; only that Amy Allen was aware of Petitioner's name at the time she interviewed the complainant. Third, the prosecutor informed counsel that they were not calling any witnesses from CARE House and that there were no notes, videos or tapes from the CARE House interview with the complainant; and defense counsel believed and relied upon that representation.

Finally, once it was revealed from Amy Allen's testimony that a CARE House staff person named Jen Hay had taken the pre-interview notes at issue, and Ms. Allen's testimony concluded, the jury was sent home for the day and were set to hear closing arguments and receive instructions the following day. The following dialogue between the attorneys and the trial court judge transpired following the jurors' exit:

The Court: Anything else gentlemen?

Mr. Manley: Judge, just for the record. Mr. Turkelson – and – and I trust him on this – was just as surprised as I that there were records from CARE House and that was not given to me in discovery and I know Mr. Turkelson didn't get them either because he was just as surprised as I was.

The Court: The issue would be unfair prejudice if the Prosecutor didn't have it, use it, know it, then I can't say that there was prejudice to you.

Mr. Manley: Well, I think he stopped immediately in that line of questioning once he did that and that's why I –

13

The Court: Certainly you could have subpoenaed records, also.

Mr. Manley: Yeah, I just want to be able to look at them and – and go from there. And no I can't subpoena these records, Your Honor, without a Court order and usually you rely on what the Prosecutor has. We've got, obviously *People versus Stanoway* which would not have allowed me to subpoena these records and I have to rely on the – the Prosecutor.

On the other hand I got everything that Mr. Turkelson had and I just think that when they sent the case over they just neglected to give this to Detective Stimson. So I don't think it was overt or anything.

I would like the opportunity to just look at it and potentially tomorrow recall somebody if there's --

The Court: Yeah, I --

Mr. Manley: – exculpatory evidence in here. I haven't had a chance to look at it.

The Court: They are original records. I guess what I'd prefer is potentially review it here and leave it here. I don't know that I want to make copies and send it out in the universe.

Mr. Manley: That's fine, Your Honor, I – I respect that and I understand. Mr. Turkelson and I can take a few minutes and look at it and I'll – there may be nothing that's any different than what we have. It just – we should both look at it and see if there's something in there that we didn't get.

The Court: Very good.

Mr. Manley: Okay, thank you.

The Court: You certainly can review it and make notes.

Mr. Manley: Great, thank you.

Mr. Turkelson: Thank Your Honor.

Tr. Vol. II, pp. 240-41.

The following day, defense counsel determined after reviewing the notes that the evidence would not have been admissible, and the trial court agreed. Defense counsel

worked out a trial strategy without the pre-interview notes:

> Mr. Manley: Yes, Your Honor, Mr. Turkelson and I, after court yesterday, had the opportunity to go through a file that Miss Allen had brought from CARE House. There were hand written notes by a third person. That would have been hearsay, certainly not admissible.

> The Court: Yeah, it's a –

> Mr. Manley: In reading the notes there was --

> The Court: – it's a bit unusual the way she explained it of someone else took my notes, but --

> Mr. Manley: Right and it would not have been admissible. The only thing it would have done is allowed me maybe on one or two minor issues to impeach, by a prior inconsistent statement of Taylor [complainant], which would have – had to have Taylor come back in.

> And as a matter of trial strategy, I've discussed it with my client, I looked at that, I looked at some of the forms that they had in there and check lists. I did not think that anything was relevant or appropriate as the way the trial has gone so far and as the evidence has come in to reopen proofs and bring that in, and again, it's a matter of trial strategy.

Tr. Vol. III, pp. 3-4.

Under these facts, Petitioner has failed to provide the Court with a sufficient basis upon which to bring an ineffective assistance of counsel claim regarding the issue of lack of preparation. Habeas relief is denied.

### 3. Failure to Conduct an Effective Cross-Examination of the Complainant

Petitioner claims that defense counsel was ineffective because he failed to properly cross-examine the complainant by raising the issue of penetration first when the prosecution failed to introduce the issue at Petitioner's preliminary examination. The Michigan Court of Appeals disagreed:

> The following exchange between defense counsel and the complaining witness is at issue:

Q: At this exam, do you remember if that was the first time you remembered that Don put his finger inside you, touched your private parts on the inside because we went over the CARE House and you didn't remember it there, right?

A: No, I didn't.

Q: And we went over it with Detective Stimson and you didn't remember him doing it there, did you?

A: No.

Q: But once you got to court you remembered that he put his finger inside you, right?

A: Yeah.

It appears that "this exam" refers to the preliminary examination, where the complaining witness testified that defendant touched her underneath her clothes while she was sitting on the basement couch. She also stated that this touching hurt a "little." Plaintiff cited this testimony, along with medical evidence suggesting penetration, to argue that there was sufficient evidence to bind over defendant on a charge of CSC I.

Before the exchange above, the only evidence presented of sexual penetration was medical testimony concerning inexplicable notching to the complaining witness' hymen, and the complaining witness' testimony that defendant had touched her under her clothes once and that it hurt. She had consistently testified that defendant touched her "on" her vagina, rather than indicating that defendant had penetrated her vagina. Direct examination was complete, so if not for trial counsel's question, there would arguably have been insufficient evidence in the case to find beyond a reasonable doubt that defendant penetrated the complaining witness. However, we are unconvinced that trial counsel was ineffective. It appears that counsel's strategy in bringing up the prior testimony was to further his goal of asserting that the story of the complaining witness had changed over time, becoming increasingly inculpatory each time it was told. Although this strategy may well have backfired, it was certainly a valid one. Counsel is not ineffective for pursuing a strategy that ultimately fails.

*Fike,* No: 260535, 2006 WL 2271267, *2.

In claims of ineffective assistance of counsel, a "[petitioner] must overcome the

presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689. (1984) (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The decision to ask certain questions or call certain witnesses is exactly the type of strategic decision that the courts expect attorneys to make, *see Boykin v. Webb*, 541 F.3d 638, 649 (6th Cir. 2008) (citing *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005) and is a matter of "trial strategy that appellate courts are ill-suited to second-guess." *Boykin*, 541 F.3d at 649 (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (internal quotation marks omitted)).

Thus, although the Court can discern the objective of defense counsel with his line of questioning the complainant (i.e., impeach her credibility), this Court will not attempt to judge or critique the relative merit of the reasons counsel decided to raise the issue with the complaining witness about her previous testimony regarding penetration. The fact that counsel's strategy was ultimately unsuccessful does not mean that defense counsel was ineffective. *E.g., Moss v. Hofbauer,* 286 F.3d 851, 859 (6th Cir. 2002) ("[A]n ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken."). Petitioner has failed to establish that counsel erred or that he was prejudiced by initiating the penetration questions with the complaining witness. Habeas relief is not warrant on this claim.

### 4. Failure to Call an Expert Witness

Finally, Petitioner argues that his trial attorney was ineffective because he failed to secure an expert witness to rebut the testimony of Amy Allen, the CARE House employee

who interviewed the complaining witness. The Michigan Court of Appeals rejected Petitioner's argument as follows:

> We are not convinced that it was not sound trial strategy to decide against interrupting a trial that appeared to be going well in order to locate an expert especially where there was already evidence presented about proper forensic interview techniques and the suggestibility of young children, where the interviewer was not permitted to testify as an expert, and where her testimony was strictly circumscribed.

*Fike,* No: 260535, 2006 WL 2271267, *2. The Court agrees. Petitioner has not demonstrated that the Michigan Court of Appeals' decision was contrary to clearly established federal law or objectively unreasonable. Rather, an examination of the record reveals that counsel did a competent job. He was able to work out an agreement with the prosecutor to limit the scope of Amy Allen's testimony. The record shows that he was prepared to address the content of Amy Allen's testimony (i.e., he knew the substance of her testimony ahead of time). The record also indicates that defense counsel was particularly familiar with Amy Allen, her credentials, her style, and her knowledge as she had testified against a former client of his in a previous case[2]. Therefore, defense counsel was prepared and knowledgeable about Amy Allen as a witness. Finally, defense counsel was able to cast doubt on the integrity of Amy Allen's interview with the complainant. As previously stated, the Court will not second-guess defense counsel's strategic decision to not call a particular witness.

Even if counsel's performance fell "outside the wide range of professionally competent assistance[,]" Petitioner cannot establish the requisite prejudice *Strickland*

---

[2]Defense counsel's client in the previous case was acquitted of the charges lodged against him.

requires. *Strickland,* 466 U.S. at 690-94. Petitioner is not entitled to habeas relief on his claim of ineffective assistance of counsel.

## C.  Failure to Create Evidence

Petitioner claims that "the failure to take photographs of the gynecological exam and the failure to videotape the CARE House interview was a failure to preserve key evidence that should be held to constitute 'bad faith destruction' of potentially exculpatory evidence in violation of due process." *Fike,* No: 260535, 2006 WL 2271267, *2. The Michigan Court of Appeals rejected Petitioner's argument as follows:

> "[T]he suppression by the prosecution of evidence favorable to an accused on request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of he prosecution. However, there is no disagreement that no videos or photographs were made, so there could not have been anything to destroy. Failure to create evidence is not the same thing as the failure to preserve evidence, and defendant cites no requirement for police or prosecutors to find or create exculpatory evidence."

*Id.* (citations omitted). The Court agrees.

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601.

Finally, it is well established that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d

685, 687 (9th Cir. 1980); *see also*, *Richards v. Solem*, 693 F.2d 760,766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence."). As the Supreme Court has explained, the government in a criminal prosecution "doe[s] not have a constitutional duty to perform any particular test." Thus, a constitutional violation does not arise merely because the government destroyed evidence without performing any particular test on it.

Therefore, the Court does not find that the Michigan Court of Appeals based its decision on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings, nor is its decision contrary to clearly established federal law. Habeas relief is denied.

### D. Insufficient Evidence to Sustain a Conviction for First-Degree Criminal Sexual Conduct

Petitioner contends that there was insufficient evidence that he sexually penetrated the complaining witness in order to support a first-degree criminal sexual conduct conviction. The Michigan Court of Appeals rejected this argument, finding as follows:

> There was medical testimony that is consistent with penetration when viewed in a light most favorable to the prosecution. The doctor who performed the complaining witness' medical examination testified that certain notching he observed on her hymen could only be caused by penetration and that it was consistent with penetration by a finger. Moreover, the complaining witness testified that she was touched underneath her clothes, on her vagina, and was penetrated by defendant. Defendant's arguments tending to undermine confidence in the verdict only pertain to witness credibility, which is solely a matter for the trier of tact. The complaining witness' testimony is all that is needed to establish sufficient evidence to support a finding that defendant penetrated the complaining witness.

*Fike,* No: 260535, 2006 WL 2271267, *3. The Court agrees.

"[T]he Due Process Clause protects the accused against conviction except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with which

he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship,* the critical question

on review of the sufficiency of the evidence to support a criminal conviction:

> [I]s whether the record evidence could reasonably support a finding of guilt
> beyond a reasonable doubt. [T]his inquiry does not require a court to 'ask
> itself whether *it* believes that the evidence at the trial established guilt beyond
> a reasonable doubt.' Instead, the relevant question is whether, after viewing
> the evidence in the light most favorable to the prosecution, *any* rational trier
> of fact could have found the essential elements of the crime beyond a
> reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted)

(emphasis in original). This "standard must be applied with explicit reference to the

substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and

through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th

Cir. 2002).

To prove first-degree criminal sexual conduct, the prosecutor was required to

establish that Petitioner "cause[d] personal injury to the victim and force or coercion [wa]s

used to accomplish sexual penetration." Mich. Comp. Law § 750.520b(1)(f). The only

element in dispute here is "sexual penetration," which the legislature has defined as "sexual

intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight,

of any part of a person's body or of any object into the genital or anal openings of another

person's body . . . ." Mich. Comp. Laws § 750.520a(o).

As indicated by the Michigan Court of Appeals, the testimony of the complaining

witness and of Dr. Norman Carter, the examining doctor, is evidence of penetration.  Dr.

Carter testified that he observed tearing on the complainant's hymen, that the tearing was

consistent with digital penetration, that the tearing could not have been caused by accident,

and that the mechanism of penetration (i.e., the finger or penis) would cause the complainant pain. The complaining witness testified that Petitioner put his hands under her clothing on at least one occasion and that it was somewhat painful. She also testified that Petitioner put his finger inside her vagina.

A rational jury could have concluded from the complainant and the doctor's testimony that Petitioner penetrated the victim's vagina with his finger. The prosecution established the element of penetration. Therefore, a rational trier of fact viewing the evidence in a light most favorable to the defense could have concluded that Petitioner was guilty of first-degree criminal sexual conduct. The state court's conclusion that the evidence was sufficient did not result in a decision that was contrary to, or an unreasonable application of, *Jackson*.

### E. Late Endorsement of a Witness

Petitioner claims that he did not receive a fair trial because of the trial court's error in allowing Amy Allen, who interviewed the complaining witness and was not on the prosecution's witness list , to be called as a rebuttal witness on the second day of a three day trial. The Michigan Court of Appeals stated:

> "[W]e reject defendant's argument that he was denied a fair trial when the trial court permitted the late endorsement of the person at CARE House who interviewed the complaining witness. Given that the name of the witness was inadvertently left off the police report and that defense counsel did not seek a continuance, we find no abuse of discretion in the late endorsement."

*Fike,* No: 260535, 2006 WL 2271267, *3. The Court agrees.

Pursuant to Mich. Comp. Laws § 767.40a(1), prosecutors are required to attach to the criminal information a list of all witnesses who might be called at trial and all *res gestae* witnesses. Not less than thirty days before trial, the prosecutor must submit a list of

witnesses that he or she intends to produce at trial. Mich. Comp. Laws § 767.40a(3). The prosecutor may add or delete witnesses from that list at any time on leave of court and for good cause shown or by stipulation of the parties. Mich. Comp. Laws § 767.40a(4).

Respondent argues that Ms. Allen's name was not in the police report and therefore was inadvertently omitted from the witness list. Defense counsel was given the opportunity to request a continuance and the record indicates that this matter was discussed between Petitioner and defense counsel and a decision was made to continue with the trial proceedings. The record further reflects that defense counsel was given an opportunity to sit down with Ms. Allen and discuss what her testimony would be.

Even assuming that the prosecutor violated the requirements for endorsing witnesses under state law, it is well-established that "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991), *quoting Louis v. Jeffers*, 497 U.S. 764, 780 (1990). The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 22, 23 (6th Cir. 1981). Petitioners' claim, that the trial court abused its discretion in permitting the late endorsement of these witnesses, is a state law claim. *See Smith v. Elo*, 1999 WL 1045877, *2 (6th Cir. Nov. 8, 1999). Therefore it is not cognizable on federal habeas corpus review.

"Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.) (citing *Estelle v. McGuire*, 502 U.S. at 69-70).

The Court concludes that the prosecutor's failure to timely endorse Amy Allen as a witness did not violate Petitioner's rights to due process and a fair trial; and habeas relief is denied.

## F. Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[3] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

After a threshold inquiry into the underlying merit of Petitioner's claims, the Court concludes that Petitioner has failed to demonstrate that reasonable jurists would find this Court's assessment of the constitutional claims debatable or wrong. Therefore, the Court denies Petitioner's request for a certificate of appealability.

---

[3]Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  March 31, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 31, 2010.

S/Marie E. Verlinde
Case Manager
(810) 984-3290